IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:20-00111

SILAS THORNTON KING

MEMORANDUM OPINION AND ORDER

Pending before the Court is the United States' Motion in Limine Regarding Defendant's Knowledge of Interstate Nexus, ECF No. 36, and Defendant's Motion in Limine, ECF No. 37. The Defendant does not object to the Government's motion. Accordingly, the United States' Motion in Limine Regarding Defendant's Knowledge of Interstate Nexus, ECF No. 36, is **GRANTED**. The Defendant will be precluded from introducing evidence related to a lack of knowledge of interstate nexus.

Upon consideration of the parties' arguments, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** the Defendant's Motion in Limine, ECF No. 37, regarding the admissibility of 404(b) evidence.

The indictment in this case alleges that, on or about June 28, 2020, at or near Milton, Cabell County, West Virginia, the Defendant knowingly and willfully transmitted in interstate commerce a communication containing a threat to injure the person of another, in violation of 18 U.S.C. § 875(c).

Specifically, the Government alleges that on June 28, 2020, Defendant was a passenger in a vehicle that was stopped by the Milton Police Department. During that stop, Defendant allegedly handed over marijuana to the officer and subsequently received a citation. The Government states that immediately after this citation, Defendant used the cellphone application Snapchat to upload a

video of himself holding the citation in which he states in part,

> And every single one of you fucking mustache having motherfuckin' cops can suck my fucking cock. I don't give a fuck. I swear to God, if I saw any of you out, and I have the opportunity to fucking shoot one right through your fucking neck, I fucking would. I swear to fuck I would.

*See* Exhibit 1.

After posting the video, the Government states that the defendant and the witnesses in the car traveled to Huntington, West Virginia, where they encountered other witnesses who had viewed the video. One witness reportedly "warned the Defendant that he better delete the video and reminded him of what happened at Sheetz." ECF No. 40 at 3. Defendant then allegedly replied, "What are they going to do? Ban me from the state?" *Id.* The video was ultimately reported to the Milton Police Department and Defendant was ultimately charged with the pending offense.

The Government claims that the Sheetz incident referred to by the witness and the Defendant arises from a verbal altercation that the Defendant had with a Sheetz, Inc. manager in December of 2019, six months before the charge conduct. The Government states that Defendant had become upset with the Sheetz Manager when he was asked to pay for a cup of water and then took a Snapchat video of himself in which he "threatens"[1] the manager. The Government states that Sheetz became aware of the video, made a record of it, and subsequently sent Defendant a letter banning him from the store.[2] At some point after this event, Defendant visited the Sheetz location and was escorted out by police.

In order to prove its case that Defendant violated 18 U.S.C. § 875(c), the Government must establish the following elements: "(1) that the defendant knowingly transmitted a communication

---

[1] The Defense maintains that the video does not contain a threat. However, as discussed by the Court at the pretrial hearing, there are two parts of this video that could potentially be considered threatening: (1) the Government suggests that at the end of the video, the Defendant essentially challenges the Sheetz manager to a physical confrontation and (2) at the beginning of the video, the Defendant states he will have the manager fired.

[2] The Defendant argues that that the "Sheetz incident" and the resulting ban was not limited to the Snapchat video, but a longer standing feud with the Sheetz manager.

in interstate . . . commerce; (2) that the defendant subjectively intended the communication as a threat; and (3) that the content of the communication contained a 'true threat' to . . . injure." *United States v. White,* 810 F.3d 212, 220–21 (4th Cir. 2016). To establish the second element, the Government must demonstrate more than mere negligence. Instead, it must show "that the defendant transmitted the communication 'for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat,' or, perhaps, with reckless disregard for the likelihood that the communication will be viewed as a threat." *Id*. at 221 (quoting *Elonis v. United States*, 135 S. Ct. 2001, 2012-13 (2015)). To prove the third element, the Government "must show that an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm." *Id*. (citation omitted). In this case, the Government argues the evidence at issue goes to the second element of the offense and demonstrates that the Defendant had knowledge that his communication actually would be viewed as a threat.

Rule 404(b)(1), states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evidence of "bad acts" may be admissible if it is used for some other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *United States v. Brizuela*, 962 F.3d 784, 797 (4th Cir. 2020). The Government bears the burden of showing that the prior-act evidence is (1) relevant for a proper non-character purpose, (2) necessary to prove an essential element of the crime (3) reliable, and (4) its probative value is not "substantially outweighed" by its prejudicial nature under the Rule 403 balancing test. *Brizuela*, 962 F.3d at 797–98 (citing *United States v. Hall*, 858 F.3d 254, 266 (4th Cir. 2017)).

Here, the evidence can be divided into three categories (1) the verbal altercation with the Sheetz employee, (2) the Defendant's conversation with the witness after the Defendant made the

Snapchat that is the subject of the charged offense, and (3) the Snapchat video regarding the Sheetz employee.

As explained at the hearing, the Court finds that the evidence pertaining to the verbal altercation that precipitated the Snapchat video about the Sheetz employee is not admissible. The incident is simply not relevant to the charged conduct nor is it necessary to prove the Defendant had knowledge that the Snapchat video he uploaded in June of 2020 would be perceived as a threat. *See Brizuela*, 962 F.3d at 797–98. This reasoning also applies to the letter sent to the Defendant by Sheetz and the Defendant's subsequent removal from the Sheetz after he was banned.

As to the conversation the witness had with the Defendant in which the Government alleges the Defendant stated "What are they going to do? Ban me from the state?," the Court conditionally finds the statements are admissible. The witness will need to establish that the statements were made in the context of a discussion specifically connecting the Sheetz video with the charged conduct. The Government will need to lay a foundation that the Defendant's remarks evince knowledge that statements of his intentions posted on Snapchat could be viewed by others as communicating a threat.

Finally, as to the video that was posted to Snapchat in which the Defendant rants about the Sheetz employee, the Court finds that its existence is admissible, but its full content likely includes inadmissible statements. Accordingly, non-relevant and highly prejudicial portions of the video would need to be redacted and only "threats" by the Defendant could be admitted. Although, these statements are prejudicial to the Defendant, they are likely admissible under the 404(b) analysis if the Government can supply a link between the charged conduct and the Sheetz incident at trial via witness testimony.

Accordingly, for the reasons stated above, the Court **GRANTS** the United States' Motion in Limine Regarding Defendant's Knowledge of Interstate Nexus. ECF No. 36. Additionally, the

Court **GRANTS, IN PART,** and **DENIES, IN PART** the Defendant's Motion in Limine. ECF No. 37.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: September 9, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE